Harry Deitchman, Appellee, v. Herman Korach, Trading as H. Korach Company, Appellant.

Gen. No. 43,465.

Opinion filed February 5, 1947. Released for publication February 21, 1947.

SHAVIN & HAMILTON and SEYFARTH & ATWOOD, all of Chicago, for appellant.

FITHIAN, SPENGLER & FINNEGAN, of Chicago, for appellee.

MR. PRESIDING JUSTICE LEWE delivered the opinion of the court.

Plaintiff, a sales agent, filed a complaint for an accounting for commissions alleged to be due him under the terms of a written agreement, and for an injunction. The cause was put at issue and referred to as a master. In conformity with the master's findings and recommendations contained in his report, a decree was entered in favor of plaintiff. Defendant appeals.

The agreement provided in substance that commencing June 2, 1941, plaintiff was to devote all of his time to the sale of ladies' coats manufactured by defendant, for which he was to receive a commission of five per cent on all orders obtained in the City of Chicago and eight per cent on all orders obtained outside of the City of Chicago; that plaintiff was allowed a weekly drawing account of $30 to be charged against commissions earned, and that the agreement could be terminated at any time by defendant giving plaintiff one week's notice.

On June 2, 1941 plaintiff signed a written receipt for 16 sample coats from the defendant (defendant's exhibit 1). The receipt contained the following provision: "These garments are the property of H. Korach Company and are to be used only as store samples."

On December 22, 1941, in accordance with the terms of the agreement defendant served a written notice terminating plaintiff's employment. At that time plaintiff still had in his possession 15 sample coats, which he refused to deliver to defendant. Afterwards, on April 6, 1942, defendant instituted replevin proceedings in the municipal court of Chicago to recover the coats in question. Subsequently, on June 27, 1942, plaintiff filed the instant suit to enjoin the replevin action and to recover commissions in the sum of $3,000

alleged to be due him on sales, after making due allowances for all advances on plaintiff's drawing account.

The chancellor enjoined the replevin action in the municipal court, and the parties stipulated that plaintiff would return the coats to defendant upon defendant depositing $150 with the master to abide the final decree.

Both parties agreed to an accounting, and the master directed plaintiff to file a statement of commissions due, and that defendant file objections and a counterstatement of credits claimed to be due him from plaintiff. Pursuant to the master's direction plaintiff filed a lengthy statement the first twelve pages of which contained the commissions claimed, aggregating in excess of $1,400. On page 13 plaintiff listed five items covering certain expenses, and page 14 contained four orders which were never shipped by defendant but on which plaintiff also claims commissions. Later defendant filed objections and a counterstatement showing a net overdraft by plaintiff of $237.97. Defendant subsequently reduced his claim for overdrafts to $37.97.

The decree found, *inter alia*, that "in the taking of the accounting as agreed, plaintiff filed a statement of moneys which he claimed due from defendant after allowing all just credits and deductions, to which defendant filed objections to certain items; that the statement of account was for commissions claimed to be due, and, in addition, plaintiff claimed for expenses in the nature of damages which were incurred by him, and a separate list of four sales made by plaintiff upon which goods were never shipped by defendant and for which the plaintiff claimed commissions; that the statement of defendant claimed an overpayment by defendant of $237.97; that later in the hearing before the master, the parties, stipulated and agreed that the amount now claimed by the defendant as overdrafts of the plaintiff should be reduced to $37.97, and that *all*

*the commissions claimed by plaintiff from defendant
on sales listed by plaintiff should be disregarded;* and
that the items in dispute between the parties were as
follows:

"A.  Expenses incurred by plaintiff for
trips to Super Cloak Company . . .      $ 93.60
"B.  Expenses incurred by plaintiff for
trips on other accounts . . . . . . . .     350.00
"C.  Expenses incurred by plaintiff for
trips to Oklahoma City, Oklahoma .    100.00

"As to Claim 'A,' the court finds that plaintiff made
several trips to this concern and procured orders on
each trip at prices conforming to those fixed by de-
fendant, but in each instance defendant refused to ship
the goods except at higher prices until finally Super
Cloak cancelled the order, and the court further finds
that commission on the order would be quite small as
compared to expenditures of time and money by plain-
tiff, and that the plaintiff is entitled to the sum of
$93.60, which is the approximate amount expended by
him for trips to Super Cloak.

"The court finds as to Claim 'B' that $350.00 is the
approximate amount claimed to have been expended
by plaintiff in trips to the following customers from
whom he procured orders, but defendant never filled
the orders or shipped the goods, for which plaintiff
claims defendant owes him damages to the extent of
the amount of his claims: C. A. Richards, Lyons, Kan-
sas, $155.75; Philip Jacobson, Granite City, Illinois,
$120.75; Hannah Department Store, Mosinee, Wiscon-
sin, $180.00; E. L. Conrick, Mount Pleasant, Michigan,
$244.50; Calumet Loan Company, $967.50; that plain-
tiff is entitled to an amount equal to his commission
of 8% on the orders of Richards and Conrick, or
$32.00, is entitled to a sum equal to 5% commission
on the Calumet Loan Company order, or $48.38, which,
with the $32.00 previously allowed totals $80.38. The

court finds that Claim 'C' for the trip to Oklahoma City, Oklahoma, should be denied.

"The court finds that the amount due plaintiff, after allowing all just deductions and setoffs is $136.01."

■ ■ Defendant maintains that plaintiff had no general lien on defendant's sample coats. No rule is better settled than that liens can only be created by agreement or by some fixed rule of law. In either case the effect is the same. It is not the function of the courts to create them. They existed at common law and they usually arise by statute or by contract, or by the usages of trade or commerce. (17 R. C. L., par. 3, p. 597.) The lien which the law favors is a specific or particular lien, and general liens are not favored but are discountenanced as encroachments on the common law and are to be strictly construed; they can be claimed only as arising from dealings in particular trades or businesses in which the existence of a general lien has been recognized by judicial decisions or where a custom to that effect can be established by evidence. (17 R. C. L., par. 5, pp. 599, 1694.)

■ The foundation for this lien, in the absence of a statute conferring it, must, as in the case of other common law liens, be either that the agent, like a bailee for hire, has by his skill or labor added to the value of some specific thing, or that by advancing his own money or property he has obtained or produced the thing. (Mechem on Agency, 2nd ed., vol. 1, par. 1694, p. 1283.)

In the instant case no proof was offered tending to establish a custom in this particular business giving plaintiff a general lien, nor does it appear that plaintiff by his skill or labor has enhanced the value of the coats. He merely used them as samples for display to prospective purchasers. We have not found any Illinois decisions on this point nor have any been cited in the briefs. Plaintiff relies upon the case of *Grauman & Shuttleworth v. Reese,* filed February 3,

1892 and reported in 13 Kentucky Law Reporter, p. 683. There the court held that a traveling salesman is entitled to a lien for his commissions, upon the samples entrusted to him by his employer. In a footnote in Mechem on Agency, 2nd ed., vol. 1, at page 1283, the author, in commenting on the *Grauman* case says, ''In the absence of a statute, however, it is difficult to see how this decision can be upheld. It does not appear that the agent produced the samples by his own labor nor by the expenditure of his own means nor that they were enhanced in value in any way by the services which he rendered. *Missouri Glass Co. v. Roberts,* Texas Civil Appeals, 137 S. W. 433, denies the right to any such lien.''

In the *Grauman* case the abstract opinion does not state the nature of the action, or reasons, and the authorities, if any, on which it is based.

We, therefore, hold that the plaintiff did not have a lien on the coats which he withheld from the possession of the defendant, and that the court erred in issuing an injunction restraining the defendant from prosecuting his replevin suit in the municipal court of Chicago.

■ ■ Defendant contends that plaintiff cannot recover expenses under the employment agreement. The complaint filed herein was based upon the theory of fact that there were commissions due plaintiff from defendant. Later plaintiff filed an amendment to the complaint which alleged in substance that plaintiff obtained orders for coats and products of defendant in accordance with the price list of the defendant but that defendant refused to ship the coats and products at the price list furnished him by defendant; that defendant devised a scheme and system to force plaintiff to resign as a salesman, in order to develop a mail order sales system; that part of the scheme was to ship certain orders for coats in entirely different sizes from those ordered; that as a result the plaintiff was compelled to make repeated trips to some of defendant's customers.

From a careful reading of the record we are of the opinion that plaintiff waived his claim for commissions in consideration of defendant reducing his claim against plaintiff for overdrafts from $237.97 to $37.97 and that the evidence supports the finding in the decree that plaintiff's claim for commissions should be disregarded. Manifestly plaintiff abandoned his claim for commissions and amended his complaint when it appeared that his overdrafts exceeded his commissions. There was no proof adduced tending to show that defendant had "devised a scheme" to force plaintiff to resign, or that the termination of the agreement was wrongful. Under the terms of the agreement plaintiff's compensation was limited to commissions on "all orders he may obtain." This provision excludes any inference that he was to be paid expenses incurred for travel or otherwise. There cannot be both an express and implied agreement in reference to the same matter. (*Ames v. Lamont,* 107 Wis. 531–534; *Wallace v. Floyd,* 29 Pa. 184–185; Mechem on Agency, 2nd ed., vol. 1, par. 1524, p. 1133.)

Since plaintiff waived his claim for commissions and the agreement precludes recovery of expenses we are impelled to hold that he cannot recover on either theory of fact as alleged in his complaint.

We have considered the other points urged and have read the authorities cited in support thereof, but in the view we take of this case we do not deem it necessary to discuss them.

The bill of complaint should be dismissed for want of equity. Defendant is entitled to the return of his deposit of $150 with the master and costs of the replevin suit in the municipal court of Chicago and, also, the costs in the circuit court.

For the reasons stated, the decree is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

KILEY and BURKE, JJ., concur.