Bernard J. KREMER, Appellee,

v.

Marjorie Marie NOBLE, Defendant.

CITY OF COUNCIL BLUFFS, Iowa, On Its Own Behalf and On Behalf of the Board of Trustees of the Police Retirement System For the City of Council Bluffs, Iowa, Appellant,

v.

Bernard J. KREMER, Appellee.

CITY OF COUNCIL BLUFFS, Iowa, Appellant,

v.

Marjorie Marie NOBLE, Defendant.

No. 64939.

Supreme Court of Iowa.

April 15, 1981.

Terrence L. Timmins, Council Bluffs City Atty., and Robert Schell, Council Bluffs Asst. City Atty., for appellant.

James M. Haney, Omaha, Neb., and David E. Richter, Council Bluffs, and James R. Welsh of Welsh, Sibbernsen & Bowen, Omaha, Neb., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, ALLBEE, and SCHULTZ, JJ.

UHLENHOPP, Justice.

In this appeal we must decide whether a city can have reimbursement from a fund paid into court by a third-person tort-feasor, for payments the city made to its injured policeman on account of medical expenses, pay, and allowances as mandated by the policeman-fireman pension statute, ch. 411, The Code 1979. On a related subject, see Annots., 4 A.L.R. 4th 504 (1981) and 70 A.L.R.2d 475 (1960).

Officer Bernard J. Kremer sustained serious personal injuries in line of duty as a

result of the negligence of a third person. The pension system paid his medical expenses, pay, and allowances as required by law, and will in the future also have substantial expense on account of Kremer's disability. Kremer sued the third person for damages, and the city intervened for the pension system claiming the right to reimbursement on account of the payments and future liability to Kremer. By agreement the three parties settled the tort claim and the third person paid the money into court under the settlement. The case proceeded between the city and Kremer over entitlement to the money. The trial court held for Kremer, and the city appealed.

Although the parties argue several other issues, we proceed directly to the merits. The city candidly states in its brief that no statutory or contractual basis exists for its reimbursement claim, but it urges that we grant relief as a matter of equity.

In our view we are not at liberty to decide the issue simply as a matter of equity. A statute is involved, and the case comes down to legislative intent. We face a problem of statutory construction.

In chapter 411 of the Code, the General Assembly has provided a detailed pension plan for civil-service policemen and firemen, with benefits for retirement, disability, and death. In doing so, the Assembly could have provided or not provided for reimbursement of the pension system from third persons who are liable to pensioners. It did provide for reimbursement in the case of workers' compensation, § 85.22 (chapter 85 inapplicable to chapter 411 personnel by virtue of § 85.1(4)), and some states have likewise done so by statute in the case of policemen-firemen pensions. *See Purdy v. Covert*, 151 So.2d 891, 894 (Fla. DCA 1963); *Sullivan v. Sudiak*, 30 Ill.App.3d 899, 903–04, 333 N.E.2d 60, 64–65 (1975). But our General Assembly did not do so in chapter 411. It did, however, include section 411.13, which may have some bearing on legislative intent:

> The right of any person to a pension, annuity, or retirement allowance, to the return of contributions, the pension, annuity, or retirement allowance itself, any optional benefit or death benefit, any other right accrued or accruing to any person under the provisions of this chapter, and the moneys in the various funds created under this chapter, are hereby exempt from any tax of the state and shall not be subject to execution, garnishment, attachment, or any other process whatsoever, and shall be unassignable except as in this chapter specifically provided.

The subject of reimbursement of pension systems was comprehensively addressed by the Alabama Supreme Court in *City of Birmingham v. Walker*, 267 Ala. 150, 160, 101 So.2d 250, 258–59 (1958). We agree with the rationale of that decision and with the result, denying reimbursement in the absence of a statute. A permanent pension system for career personnel of government is somewhat different from the ordinary master-servant situation covered by workers' compensation, where the relationship may be more brief or tenuous. With the permanent pension system, the employee frequently makes contributions to a fund, in addition to contributions by the governmental unit. This is so under chapter 411. Usually actuaries are employed, and with the better planned systems the actuarial odds are calculated and funded, so as to have the money to meet covered contingencies as they occur.

In such a setting, we think legislative intent is unlikely that injured workers must give up part of their plan benefits if and when they are fortunate enough to obtain recovery from a culpable third person—or, stated the other way, that they must give up part of their recovery if they retain their plan benefits. In the situation of recovery from a third person, the right of pension system reimbursement is dependent upon the presence of such a provision in the act, and no such provision exists here. The workers' compensation and the pension situations involve different considerations in the reimbursement setting, so that the result here is not governed by *Goebel v. City of Cedar Rapids*, 267 N.W.2d 388 (Iowa 1978). Even in the workers' compensation

situation, however, a number of courts refuse employers the right of reimbursement in the absence of a statute granting it. 101 C.J.S. *Workmen's Compensation* § 992, at 509 (1958). *See also* 82 Am.Jur.2d *Workmen's Compensation* § 429, at 198 (1976).

The legislature can of course expressly provide that the particular pension fund shall have the benefit of pensioners' tort claims against third persons to the extent of plan benefits paid or payable, and this might cause some long-range reduction in required contributions to the fund by the employees and the employer. But that is a policy determination to be made by the legislative branch, and nothing in chapter 411 indicates that the Iowa General Assembly has taken such a course.

The Pennsylvania Supreme Court has ruled the opposite from *Walker. Topelski v. Universal South Side Autos, Inc.*, 407 Pa. 339, 352, 180 A.2d 414, 420 (1962). Other decisions, however, hold similarly to *Walker. Standard Oil Co. v. United States*, 153 F.2d 958, 963 (9th Cir. 1946), *aff'd*, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947); *Employers Liability Assurance Corp. v. Daley*, 271 A.D. 662, 665, 67 N.Y.S.2d 233, 234–35, 68 N.Y.S.2d 743 (1947), *aff'd*, 297 N.Y. 745, 77 N.E.2d 515 (1948); *New York v. Barbato*, 5 N.Y.S.2d 125, 127–28 (Mun.Ct. 1938). *See also The Steel Inventor*, 36 F.2d 399, 401 (S.D.N.Y.1929); *City of Evansville v. Byers*, 136 Ind.App. 448, 454, 202 N.E.2d 399, 402 (1964); *Loman v. Harrelson*, 437 S.W.2d 123, 126–27 (Mo.Ct.App.1968); *City of Richmond v. Hanes*, 203 Va. 102, 108–09, 122 S.E.2d 895, 900 (1961). We regard these decisions as the better reasoned ones.

The trial court held correctly that Kremer is entitled to the money in the clerk's hands.

AFFIRMED.